UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------x
JERRY K. SUTTER,

    Plaintiff,

vs.                           **Complaint**

WAL-MART STORES, INC.

    Defendant.
-------------------------------------------x

**06 CIV. 3349**

**ROBINSON**

Plaintiff, Jerry K. Sutter, being duly sworn, hereby states and avers as and for his complaint against defendant, Wal Mart Stores, Inc. as follows:

I. **Parties**

1. Plaintiff resides in the County of Dutchess, State of New York, within this judicial district.

2. Defendant is a multi-national corporation which does business in the State of New York.

II. **Jurisdiction**

3. Within 300 days of his termination, plaintiff timely filed a complaint of retaliation with the EEOC.

4. The EEOC rendered its decision in this matter and issued a right to sue letter less than 90 days before the filing of this Complaint.

1

5. This Honorable Court has jurisdiction over this matter pursuant to 42 U.S.C. Sec. 2000e-5, **et seq.**, as well as by and through 28 U.S.C. secs. 1331, 1343(3) and (4) and 42 U.S.C. sec. 1988.

III. **Factual Averments**

6. Defendant hired plaintiff as a management trainee in 2003 and, after training and evaluation, assigned him to the Wal-Mart store in the Town of Newburgh.

7. By November 2003, plaintiff had become Assistant Store Manager and was responsible for certain specific departments or units at the store.

8. On or about November 23, 2004, plaintiff sought to access the company's Open Door Policy to complain about an incident of racial/disability act discrimination against a cashier trainee, who is Black and Disabled.

9. In support of this request, plaintiff presented a detailed description of the offensive conduct and cited potential violations of the federal civil rights statutes.

10. Plaintiff overheard racially disparaging comments about this cashier by another manager and understood that his termination was not job-related but done because some in store management felt that having this individual at the front of the store would present an image they disfavored.

11. After making his complaint, plaintiff advised corporate personnel that he distrusted any investigation by the store or district manager because he believed there were potential conflicts of interest in their doing any investigation.

12. After investigation, a representative from the corporate office advised plaintiff that defendant had determined to offer the terminated cashier back his job.

13. However, plaintiff expressed concern that the company had not taken any remedial or punitive action against those who had engaged in racial and disability-based discrimination.

14. After filing his initial complaint and it became widely known, plaintiff noticed a distinct change in the way his co-managers treated him.

15. Plaintiff's Store Manager refused to speak alone with plaintiff after he made his report of discrimination.

16. This adverse change caused plaintiff to request a transfer to another store where he would not be shunned and subjected to harassing comments about being a whistle blower.

17. In early January 2005, an attorney with whom plaintiff consulted wrote to the Regional Personnel Manager, Mr. Hawk, indicating that the offending managers had not been disciplined and reiterating plaintiff's request for a transfer

and noting the paucity of minority managers in the district.

18. Wal-Mart did not respond to this letter for seven weeks.

19. Between this letter and the company's response, defendant's agents provided plaintiff a baseless performance evaluation which, for the first time, rated him as a below average employee and denied him an annual raise.

20. Plaintiff objected to this evaluation, linking it to his prior complaint of discrimination.

21. By the date of the evaluation, defendant had transferred its author out of the district; he was an individual about whom plaintiff complained in November 2004.

22. Plaintiff disputed this evaluation in discussion with his district manager who advised that it would be taken out of his file or changed within sixty days and that plaintiff would then receive a raise.

23. Neither occurred and, on his first day in the store, plaintiff's new store manager told him that the prior statements about re-evaluation after sixty days were not true and that plaintiff would not be re-evaluated.

24. On February 28, 2005, defendant responded to plaintiff's counsel's letter of January 5, 2005, reiterating the denial of plaintiff's request for a transfer, claiming that it had made clear to the terminated cashier that he could re-apply for

4

his job and failing to comment on whether anyone had been disciplined for the racial bias plaintiff had revealed.

25. On April 6, 2005, plaintiff's attorney again requested that plaintiff receive a transfer, pointing out that others had not been disciplined for violating the company dress code, as plaintiff had been the prior November and renewing plaintiff's claim that members of racial minorities were substantially under-represented amongst the company's manager and demanding an end to the hostile work environment toward him and minorities in the Newburgh store.

26. Three months later, counsel for Wal-Mart responded, claiming that its policy disallowed plaintiff from transferring to another store since he had active disciplinary coachings and citing numerous inaccurate negative comments about him in the February 5, 2005 performance evaluation.

27. On or about July 27, 2005, Wal-Mart terminated plaintiff's employment allegedly for not performing an assigned task quickly enough.

28. This rationale could not reasonably justify termination in that plaintiff and his associate completed this relatively minor task within 48 hours of its being assigned and there was never any great sense of urgency associated with it.

29. Before the incident which allegedly triggered his termination, two managers told plaintiff that they had been made aware that he was on his way out

and one reported that he was told it would not benefit his career to associate with plaintiff.

30. As a consequence of his termination, plaintiff has experienced pecuniary and non-pecuniary loss and damages.

31. Defendant's conduct was spiteful, malicious and contrary to law, permitting an award of punitive damages against it

## IV. **Cause of Action**

32. Plaintiff incorporates paras. 1-31 herein as if fully repeated.

33. By retaliating against plaintiff for the filing of complaint of illegal discrimination, defendant violated 42 U.S.C. sec. 2000e-5, **et. seq.**

## V. **Prayer for Relief**

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to hear and decide this matter;

c) award to plaintiff compensatory and punitive damages against defendant as permitted by law and with pre and post-judgment interest;

d) order defendant to reinstate plaintiff to another store as an Assistant Manager;

e) order defendant to pay the reasonable attorneys fees and costs arising from prosecution of this matter and

f) enter any other award which the interests of justice and equity dictate.

Respectfully submitted,

MICHAEL H. SUSSMAN (3497)

SUSSMAN LAW OFFICE
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Plaintiff Sutter