Thelen Reid Brown Raysman & Steiner LLP
Joel L. Finger
Joseph E. Field
900 Third Avenue
New York, New York 10022
(212) 895-2000

Attorneys for Defendant Wal-Mart Stores East, L.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – X

JERRY K. SUTTER,

                      Plaintiff,

       vs.

WAL-MART STORES, INC.,

                     Defendant.

– – – – – – – – – – – – – – – – – – – – – – – – – X

:    ECF CASE

:
:
:    No. 06 CV 3349 (SCR)(MDF)
:
:    **DEFENDANT'S STATEMENT OF**
:    **UNDISPUTED MATERIAL FACTS**
:
:
:

       Defendant Wal-Mart Stores East, L.P.[1], pursuant to Local Rule 56.1(a) of this Court,

submits this statement of undisputed material facts in support of its motion for summary

judgment seeking dismissal of the complaint filed by Plaintiff Jerry K. Sutter ("Plaintiff" or

"Sutter"). The statements herein are supported by citations to deposition transcripts, documents

produced during discovery, and affidavits or pleadings filed by the parties which are included as

part of Wal-Mart's motion.[2]

---

[1] Wal-Mart is incorrectly named in the caption as "Wal-Mart Stores, Inc."

[2] These documents are attached to the Declaration of Joel L. Finger in Support of Defendant's Motion for
Summary Judgment, dated October 8, 2007 ("Finger Decl.") which includes the accompanying affidavits
of Jim Spencer, sworn to on October 3, 2007 ("Spencer Aff.") and Robert Williams, sworn to on October
3, 2007 ("Williams Aff."). References to a person's last name and a page number (e.g., "Sutter 127") are
to that person's deposition transcript and the page in the transcript at which the testimony can be found.
References to a person's name and an exhibit number (e.g., "Sutter Ex. 2") are to that exhibit used at that
person's deposition.

**A.      Plaintiff's extensive history of poor work performance**

1.       Wal-Mart hired Plaintiff as an Assistant Manager Trainee on March 24, 2003. Sutter 127, Sutter Ex. 2.

2.       Shortly thereafter, Plaintiff began a sixteen week management training program at Wal-Mart's Fishkill, New York store.  Sutter 133-34.

3.       Store Manager Dan Conroy complained to District Manager Jim Spencer about Plaintiff's performance while Plaintiff was in that program.

4.       In July 2003, Wal-Mart demoted Plaintiff to an hourly position.  Sutter 136-38; Spencer Ex. 3.

5.       Plaintiff utilized Wal-Mart's Open Door policy to challenge this demotion. Spencer Ex. 3.

6.       Wal-Mart has an "Open Door" policy providing that associates may communicate with managers about any Wal-Mart related issue.  Alvord 73, Alvord Ex. 10; Newton 53-54; Spencer 33-34, Spencer Ex. 6.  Where an allegation of discrimination or improper conduct is raised, Wal-Mart performs an internal investigation, which generally includes interviewing and obtaining statements from witnesses.  Newton 54.

7.       Wal-Mart placed Plaintiff into another management training class, which began on August 9, 2003, and was based in Milford, PA.  Sutter 140-41; Spencer Ex. 3.

8.       On October 7, 2003, while in the next training program, Plaintiff received a Written Coaching which listed as its reasons "Job Performance" and "Judgement-Poor Business Judgement".  Sutter Ex. 3.

9.       Wal-Mart has a Coaching for Improvement process which informs an associate when they are not meeting the requirements of their position.  There are four levels of coaching for improvement (levels may be skipped as appropriate – it is not a rigid "progressive" system): a

Verbal Coaching, a Written Coaching, a Decision-Making Day and finally, termination. Sutter 150-51. The Decision-Making Day provides the associate a final opportunity to evaluate and change their behavior prior to termination. Spencer 55; Sutter 151.

10.     The October 7, 2003 Written Coaching stated, in relevant part, that "on more than one occasion Jerry has been observed by a member of management using poor judgement and not performing to Wal-Mart level of expectation. Jerry needs to be continuously talked to and reminded of what is going on". The Coaching also noted that "Jerry's behavior is having a negative impact on the class. He is slowing down the overall learning process." Sutter Ex. 3, Sutter 141-43.

11.     Plaintiff used the Open Door to challenge this Written Coaching. Spencer 34-35, Spencer Ex. 3; Sutter 145-50, Sutter Ex. 4.

12.     On November 3, 2003, Spencer changed the Written Coaching to a Verbal Coaching because Plaintiff "has taken ownership in addressing his shortfall in his training". Spencer 34-35, Spencer Ex. 3; Sutter 145-50, Sutter Ex. 4.

13.     On November 28, 2003, Plaintiff received a Management Training Program Performance Appraisal at the conclusion of his second training program. Spencer 37; Sutter 163, Sutter Ex. 5.

14.     Wal-Mart associates generally receive a formal appraisal at the end of a training period and on an annual basis thereafter. During 2003-2005, Wal-Mart ranked its associates' performance on a scale from 1.0 to 5.0, where a rating of 3.0 to 3.9 was "Meets Expectations" or "Valued Performer." Williams Aff. ¶ 3. A rating below 3.0 was "Below Expectations," and a rating above 3.9 was "Above Expectations" or "Exceptional Performer." Williams Aff. ¶ 3; Newton 35-36; Sutter Ex. 6 at 000146.

15.    Plaintiff's overall rating on the November 28, 2003 Management Training Program Performance Appraisal was 3.44, equating to a "Valued Performer". Sutter 165.

16.    The appraisal noted certain criticisms of Plaintiff's performance including that that "[Plaintiff] should work on communicating better when he has concerns or issues that he would like addressed", that he needed to "work on communicating decisions with confidence" and that he needed to "take the initiative on more tasks." Sutter Ex. 5.

17.    Plaintiff added his own comments that he would work towards improving his knowledge and relationships with team members. Sutter Ex. 5 p. 3.

18.    At the end of November 2003, after completing the second training program, Wal-Mart transferred Plaintiff to its Newburgh, New York store (the "Store") to start his job as an Assistant Manager. Sutter 157-58.

19.    On February 12, 2004, Plaintiff received an Performance Appraisal from Store Manager Robert Williams ("Williams") and Spencer. Sutter Ex. 6.

20.    Plaintiff received an overall rating of "Valued Performer," and his numerical grade was 3.0, the lowest score in this category. Sutter 169.

21.    Plaintiff was rated "Below Expectations" in two of the five categories appraised and a "Valued Performer" in the other three categories. Sutter Ex. 6.

22.    Plaintiff testified that he was satisfied with this appraisal. Sutter 168.

23.    On March 12, 2004, Plaintiff received a Written Coaching. Sutter 178-83, Sutter Ex. 8.

24.    The Coaching noted that "On Wednesday 11th, 2004, JK failed to verify the number of trucks for the day. JK failed to make sure both trucks were unloaded causing a disruption of the entire next days delivery schedule with Tobyhanna". Under a section entitled

"Impact of Associates Behavior" the Coaching stated "Poor customer service due to merchandise not able to be put on the shelfs because the truck was not unloaded. Poor associate morale due to having to unload 3 trucks in one day instead of 2." Sutter Ex. 8.

25.    Plaintiff challenged the Coaching. Sutter 182-83.

26.    Spencer upheld the Coaching. Sutter 182-83.

27.    From March 29 to June 18, 2004, Wal-Mart temporarily assigned Plaintiff to another Wal-Mart store in East Greenbush, New York to assist in the remodeling of that store, where his work was overseen by a different manager. Sutter 184-89, Sutter Ex. 7.

28.    Plaintiff received an Evaluation at the conclusion of that project rating him as "Meets Expectations," with an overall numerical grade equivalent to 3.11. Sutter Ex. 7.

29.    On November 16, 2004, Plaintiff received a Coaching. Sutter Ex. 12.

30.    This was a Decision-Making Day Coaching. Sutter Ex. 12.

31.    The Coaching states, in part, "1. Jerry has been asked on several occasions by myself & our District Mgr. why are you not following the Asst. Mgr. dress code.  2. Also, Jerry has shown a lack of respect toward other associates & fellow Asst. Mgrs. when confronting them about issues related to customers." The Coaching states under the heading "Behavior Expected of Associate", "Jerry has to address associates issues with respect for the individual as well as his fellow asst. mgrs.  Also, Jerry needs to follow the dress code." Sutter Ex. 12, Sutter 215-25.

32.    Prior to receiving this Coaching, Wal-Mart had counseled Plaintiff regarding its dress code. Sutter 209-11.

33.    Plaintiff understood that after a Decision-Making Day Coaching, his next disciplinary problem would result in his termination. Sutter 225-26.

34.    Plaintiff was required at that point to submit a written plan of action setting forth how he intended to remedy his behavior and to insure that he performed his job in conformance with Wal-Mart's expectations. Sutter 151-52.

35.    On November 23, 2004, Plaintiff requested an Open Door meeting to challenge this Coaching. Sutter 285-88, Sutter Ex. 16.

36.    On December 3, 2004, Spencer met with Plaintiff for that Open Door meeting. Sutter 307-11.

37.    Spencer told Plaintiff that the Coaching was appropriate and would stand. Sutter 307-11.

38.    Plaintiff submitted his action plan on December 6, 2004. Spencer 12-13, 52-53; Sutter 312.

39.    On February 21, 2005, Plaintiff received a Performance Appraisal completed by Williams and Spencer. Sutter Ex. 25.

40.    While Williams already had transferred to another Wal-Mart store, he retained responsibility for completing the performance evaluations for the managers in the Store, including Plaintiff, based upon the previous year's performance, in accordance with Wal-Mart's usual practice. Williams 29, 44-45; Williams Aff. ¶ 4.

41.    Plaintiff's overall rating on the February 2005 Evaluation was 2.8, and therefore was "Below Expectations." Sutter Ex. 25.

42.    The 2005 Evaluation included in it criticisms of Plaintiff's work including that Plaintiff "needs to be more involved in schedules to meet the customer expectations", his "pricing and signing of merchandise is below company standards" and that Plaintiff needs to work on "communicating effectively to the associates." Sutter Ex. 25.

43.    Williams attests that the February 2005 Appraisal was a more accurate assessment of Plaintiff's work than was the 2004 Appraisal because: a) Williams had to base the 2004 Appraisal on his observation of Plaintiff for only the three months Plaintiff was at the Store while he was able to observe Plaintiff's work for a full year for the February 2005 Appraisal; and b) the February 2005 Appraisal was done on a new Wal-Mart form that was much more detailed than the prior form used in 2004, allowing Williams to evaluate Plaintiff (and the other managers) using more criteria.  Williams Aff. ¶ 6.

44.    Williams attests that the February 2005 Appraisal also reflected a drop in the Store's overall performance, which had an affect on the evaluation of all of the managers. Williams Aff. ¶ 6(c).

45.    In Williams' view, Plaintiff's leadership and communication skills were extremely poor, which, because of Williams' more extensive opportunity to observe Plaintiff by the time he did the February 2005 Evaluation, led to a lower rating on that Evaluation.  Williams Aff. ¶ 6(d).

**B.    Plaintiff complains to Wal-Mart's Ethics Hotline**

46.    Plaintiff claims that on November 23, 2004, he made an anonymous call to Wal-Mart's Ethics Hotline to report discriminatory comments purportedly made by Wal-Mart managers at the Store.  Sutter 238-39.

47.    Wal-Mart has explicit anti-discrimination and anti-retaliation policies that are distributed to all associates.  Newton 47-51; Spencer 31-33, 57-58, Spencer Ex. 5.

48.    This was the first instance of alleged discrimination Plaintiff witnessed at Wal-Mart.  Sutter 115-16, 156-57.

49.     None of the Coachings or performance appraisals that Plaintiff received before November 23, 2004 were in retaliation for any complaints of discrimination he made to anyone at Wal-Mart. Sutter 139, 172-73, 184, 227-28.

50.     Wal-Mart investigated Plaintiff's complaint and could not substantiate the allegations of discrimination. Spencer 23, 27-28.

## C.     The anonymous internal retaliation complaint

51.     Plaintiff claims Assistant Manager Ramona Pineiro ("Pineiro") retaliated against him on March 21, 2005. Sutter 334-38, Sutter Ex. 27.

52.     Plaintiff claims that on March 22, 2005, he called Wal-Mart's Ethics hotline. Sutter 351-52.

53.     The caller alleged, among other things, that Pineiro had "retaliated against members of management due to allegations against her" from a previous discrimination complaint. Finger Decl. Ex. K at D01135; Sutter 352-53.

54.     Store Manager Shawn Alvord ("Alvord"), who succeeded Williams, investigated the complaint and was unable to substantiate the charge of retaliation. Alvord 30-46, Alvord Ex. 3.

## D.     Plaintiff's claims of retaliatory treatment

55.     Plaintiff claims that Co-Managers Dan Golden ("Golden") and Mike Fino ("Fino") shunned him in retaliation for one or more complaints he made to Wal-Mart. Sutter 377-78.

56.     Plaintiff testified that he did not know if Golden and Fino knew that Plaintiff had made any complaints of discrimination. Sutter 382-83.

57.     Plaintiff complains that Williams and Spencer, on separate occasions, advised Plaintiff that they could not speak alone with him.  Complaint ¶ 15; Sutter 303, Sutter Ex. 20 at 000022; Pl. Int. Response ¶ 9(a).

58.     Williams and Spencer attest that it is common Wal-Mart practice to have a witness present at a meeting.  Williams Aff. ¶ 7; Spencer Aff. ¶ 7.

59.     Plaintiff alleges that Wal-Mart refused his late 2004 or early 2005 request for a lateral transfer in retaliation for his November 2004 anonymous complaint.  Complaint ¶¶ 16, 17, 25.

60.     To be eligible for a transfer, an associate must not have any active Coachings. Spencer Aff. ¶ 5.

61.     An "Active Coaching" is a coaching that has been issued within the previous 12 months.  Sutter Ex. 12.

62.     Plaintiff had one or more active Coachings at the time he sought the transfer. Spencer Aff. ¶ 6.

63.     Spencer denied Plaintiff's transfer request because Plaintiff had one or more active Coachings.  Spencer Aff. ¶ 6.

64.     Plaintiff was not eligible to transfer because he had one or more active Coachings when he sought the transfer.  Spencer Aff. ¶¶ 5-6.

65.     Plaintiff agrees that he was not qualified for the transfer because he had an Active Coaching.  Sutter 386-87.

66.     Plaintiff never formally submitted the required paperwork requesting a transfer to another store.  Spencer Aff. ¶¶ 3, 6.

67.     Plaintiff did not apply for or identify a specific position he wanted to transfer to. Spencer Aff. ¶¶ 3, 6.

68.     Plaintiff did not have the requisite transfer approval from his immediate manager. Spencer Aff. ¶¶ 3, 6.

69.     Plaintiff has not identified a specific position that was available for him to transfer to.  Spencer Aff. ¶ 3.

70.     Had Wal-Mart granted Plaintiff a transfer, his pay most likely would not have changed or would have decreased.  Spencer Aff. ¶ 4.

71.     Steve Newton ("Newton") testified at his deposition that, contrary to his August 16, 2006 statement, Alvord never said to him that Sutter was "on his way out."  Alvord 22, Alvord Ex. 1; Newton 109, 115-16.

72.     Alvord's comments to Newton regarding Newton's career and as reflected in Newton's statement, had nothing to do with any complaint of discrimination or retaliation that Plaintiff made, or that Alvord believed Plaintiff may have made.  Alvord 19-22, Alvord Ex. 1.

73.     Steve Kovelkoski's July 22, 2006 statement provides, in relevant part, that Alvord and Fino were out to terminate Plaintiff because Plaintiff allegedly "was faking his foot injury and was milking the system."  Alvord Ex. 2.

**D.     The events surrounding Plaintiff's termination**

74.     On Thursday, July 7, 2005, Alvord asked Plaintiff to replace a display of blinds with one of rugs.  Alvord 55-56, Alvord Ex. 8; Pineiro 44-47, Pineiro Ex. 3.

75.     The task Alvord assigned to Plaintiff on July 7, 2005 should have taken between 10-30 minutes to complete.  Alvord Ex. 8; Newton 104.

76.     Alvord told Plaintiff that the task was to be completed by 2:00 p.m. that day. Newton 104.

77.     Plaintiff did not complete the task on July 7, 2005.  Alvord 55-56; Newton 104-06.

78.     On Friday, July 8, 2005, Alvord directed Plaintiff to complete the display change he failed to complete the day before.  Alvord 55-56, Alvord Ex. 8.

79.     On July 8, 2005, Plaintiff again did not complete the adjustment of the display as requested by Alvord.  Alvord 56-57, Alvord Ex. 8.

80.     On July 8, 2005, Plaintiff decided to alter the displays in a different way than requested by Alvord.  Alvord 56-57, Alvord Ex. 8.

81.     Alvord testified that on the next Monday, July 11, 2005, at the start of the morning shift, he saw that Plaintiff had still not complied with his directives from July 7 and 8, 2005.  Alvord 56-57, Alvord Ex. 8.

82.     On July 11, 2005, Alvord told Plaintiff to adjust the display.  Alvord 56-57, Alvord Ex. 8.

83.     Alvord testified that on July 11, 2005, he told Plaintiff to make sure the display was adjusted that day.  Alvord 56-57, Alvord Ex. 8.

84.     Plaintiff asked Alvord on July 11, 2005 why he had to move the display of as Alvord had requested.  Alvord 58-63, 69-72, Alvord Ex. 8.

85.     Alvord left work early on July 11, 2005.  Alvord 69.

86.     After leaving work on July 11, 2005, Alvord called Co-Manager Sandi Spanti and asked her whether the display had been taken care of as he had requested.  Alvord 69.

87.     Spanti responded to Alvord that she also had told Plaintiff to complete the task that day (July 11), but that Plaintiff had left work for the day and not completed the task.  Alvord 69, 72, Alvord Ex. 8.

88.     Alvord testified that after speaking to Spanti, he decided on July 11 to discipline Plaintiff for insubordination and lack of respect for Alvord's directives.  Alvord 63.

89.     Because Plaintiff already had received a Decision-Making Day, termination was the next step in the disciplinary process.  Spencer 55; Sutter 151.

90.     Alvord was thereafter out of the Store for vacation.  Alvord 63.

91.     Alvord terminated Plaintiff on the first day that they were again together in the Store, which was July 27, 2005.  Alvord 63-64, Alvord Ex. 8; Sutter Ex. 33.

92.     Plaintiff internally challenged his termination.  Sutter 414.

93.     On August 9, 2005, he met with District Manager Greg Franks ("Franks") for his Open Door meeting to challenge the termination.  Sutter 416-18.

94.     Plaintiff challenged his termination to Mr. Franks as unfair, claiming that it stemmed from a miscommunication between Alvord and Spanti.  Sutter Ex. 35.

95.     Plaintiff did not claim in that Open Door that Alvord made the termination decision because of unlawful retaliation for his November 2004 or his March 2005 anonymous internal complaints.  Alvord Ex. 9, Sutter Ex. 35.

96.     Franks upheld the termination.  Sutter 418.

97.     Plaintiff then used the Open Door again, challenging his termination to Wal-Mart's Regional Vice President, Margaret Daniels.  Sutter 422-23, Sutter Ex. 34.

98.     Plaintiff did not allege to Daniels that he believed that he was terminated for reporting alleged racial discrimination.  Rather, Plaintiff contended that the termination was based on a foot injury he had.  Sutter 34 at 000033-34.

99.     Ms. Daniels upheld the termination.  Sutter 423-24.

100.    Following his termination, Plaintiff told numerous third parties, including his girlfriend, his new employer, a psychiatric nurse practitioner, and one of his orthopedic doctors, that Wal-Mart terminated him because it did not want to continue accommodating his foot injury.  McEckron 85-86; Sutter 59-60, 424-26, Sutter Ex. 36; Paradiso 34-35, Paradiso Ex. B.

Dated:  New York, New York
        October 8, 2007

                                 **THELEN REID BROWN RAYSMAN**
                                 **& STEINER LLP**

                        By:_____

                                Joel L. Finger
                                Joseph E. Field
                      900 Third Avenue
                      New York, NY 10022
                      (212) 895-2000

                      Attorneys for Defendant Wal-Mart Stores East, L.P.

THELEN REID BROWN RAYSMAN & STEINER LLP
Joel L. Finger
Joseph Field
900 Third Avenue
New York, New York 10022
(212) 895-2000

Attorneys for Defendant

UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

JERRY K. SUTTTER,

                  Plaintiff,

   -against-

WAL-MART STORES, INC.

               Defendant.

: 06 CV. 3349 (SCR)(MDF)

**DECLARATION OF SERVICE**

------------------------------------------------------------------- x

      **JOSEPH FIELD,** an attorney duly admitted to the Bar of this Court, swears under penalty of perjury that, on October 8, 2007, I caused the attached Defendant's Local Rule 56.1 Statement of Material Facts, dated October 8, 2007, to be served by Federal Express on:

Michael H. Sussman, Esq.<br>40 Park Place<br>P.O. Box 1005<br>Goshen, NY 10924

Dated:   October 8, 2007

                                     _____
                                         Joseph Field